[No. 4642.  Decided August 11, 1903.]

PAUL HOPKINS & SON, *Respondents,* v. SEATTLE SCANDI-
NAVIAN FISH COMPANY, *Appellant.*

SALES — MANUFACTURE OF MACHINERY — COMPLETION WITHIN REA-
SONABLE TIME.

In an action to recover the price of a boiler constructed upon
defendant's order, the latter is not entitled, by way of counter-
claim, to damages for delay in filling the order, when the con-
tract provided that the boiler was "to be completed within six
weeks after the arrival of the iron in Seattle," and the evidence
shows that the plaintiffs had promptly placed their order for the
necessary materials, but were delayed in their work by inability
to procure a certain thickness of steel plate, because of its not
being in the market, and that, after getting the consent of the
government inspectors to the substitution of thinner plates, they
at once procured same and promptly completed the boiler within
six weeks thereafter.

Appeal from Superior Court, King County.—Hon.
BOYD J. TALLMAN, Judge.  Affirmed.

*Metcalfe & Jurey* and *Charles K. Jenner,* for appel-
lant:

No time is fixed by the written agreement within which
the plaintiff should procure the "arrival of the iron at
Seattle."  This was a duty resting solely and alone upon
the plaintiffs, and the starting point of the six weeks'
limitation provided. in the agreement for the completion
of the boiler.  Then the law implies an agreement on the
part of the plaintiffs to procure the arrival of the iron
in Seattle within a reasonable time.  *Hamilton v. Scully,* 8
N. E. 767; *Truesdale Mfg. Co. v. Hoyle,* 39 Ill. App. 532;
*McCartney v. Glassford,* 1 Wash. 579; *Griffin v. Ogle-
tree,* 21 South. 488; *Curtiss v. Waterloo,* 38 Iowa, 266;
*Williams v. Hart,* 116 Mass. 513; *Sawyer v. Hammatt,* 15

33-32 WASH.

Me. 40; *Randall v. Johnson,* 42 Am. Rep. 365; *Nunez v. Dautel,* 19 Wall. 560 (22 L. ed. 161); *Noland v. Bull,* 33 Pac. 983; *Williston v. Perkins,* 51 Cal. 554; *Bruce v. Smith,* 44 Ind. 1; *Gill Mfg. Co. v. Hurd,* 18 Fed. 673.

*John E. Ryan,* for respondents.

The opinion of the court was delivered by

FULLERTON, C. J.—On March 2, 1901, the respondents, doing business at Ballard, Washington, as the Ballard Boiler Works, entered into a contract in writing with the representative of the appellant by the terms of which they undertook to build for the appellant a marine boiler of the Clyde type, according to specifications set forth in the contract, for the sum of $900, to be paid in installments of $300 each; the first when the contract should be signed, the second when the boiler should be half completed, and the last on the completion and inspection of the boiler. It was specified that the boiler should be built of marine steel, properly tested and inspected, sufficient to stand the working pressure allowed by law on half-inch steel, and "to be completed within six (6) weeks after the arrival of the iron in Seattle." The respondents finally completed the boiler about the middle of September, 1901, and were paid the first and second installments of the purchase price. The last installment was not paid, and the appellant filed a lien on the boiler and the boat into which it was placed to secure the balance of the contract price, together with a claim of $101.60 for work and material not included in the contract. This action was brought to foreclose the lien. The complaint was in the usual form. The appellant answered, putting in issue certain allegations of the complaint, and setting up by way of counterclaim a claim for damages in the sum of

$2,700 for delay in the completion of the boiler, averring that it was not completed within the time prescribed by the contract. The trial court found that the boiler had been completed within the prescribed time, and entered judgment in favor of the respondents for the amount of their demand, less $24.60, and entered a judgment for the amount found due, decreeing the same to be a lien on the steamer into which the boiler was placed.

The principal contention was over the question whether or not the boiler had been completed within the time limited by the contract. This time, it will be observed, was not definitely fixed. By the terms of the contract the respondents were to furnish the necessary material to complete the boiler, and were to complete it "within six (6) weeks after the arrival of the iron in Seattle." The appellant construes this to mean that the respondents were obligated to use reasonable diligence in procuring the material necessary to complete the boiler, and are responsible to it for any damages it has suffered because of a delay in its completion, caused by their failure to use such diligence; and argues that it appears from their own testimony that by the exercise of only common diligence the materials could have been procured, and the boiler completed, long before it was turned over to it. The testimony on this point is to the effect that immediately upon the execution of the contract the respondents placed an order with a San Francisco house for the steel necessary for the construction of the boiler, and received within a reasonable time—on March 24, 1901—the greater part required; all, in fact, except that necessary to be used in the construction of the flues. These were required by the contract to be constructed out of half-inch steel. Steel of the kind required of this thickness seems not to have been

in the market, and the respondents were unable to pro-
cure it from their San Francisco correspondent or else-
where. About the middle of June they applied to a gov-
ernment inspector of boilers at Seattle, by whom the
boiler would have to be finally approved, for leave to con-
struct this part of the boiler out of three-eighths-inch steel.
This permission was granted them, provided they would
put in certain reinforcements, not called for in the orig-
inal specifications. Steel of this thickness was thereupon
ordered, and the boiler completed within six weeks after
its arrival in Seattle. The boiler was subsequently ap-
proved by the inspector, and accepted by the appellant.
While there is much in the record on the question of the
amount of diligence exercised by the respondents in their
efforts to procure the materials, it nowhere appears that
marine steel of the dimensions called for in the contract
could have been procured at that time by them; nor does
it appear that it was commonly difficult to procure, or that
the exercise of ordinary business prudence would have
informed the respondents at an earlier time than they
abandoned the search for it that it could not then be pro-
cured. Indeed, in so far as there is anything in the rec-
ord at all on these questions, it points to a contrary con-
clusion. It was shown that this class of steel was usually
kept in stock by certain of the Seattle wholesale dealers,
and that one such, when applied to for it, stated that they
had none at that time, but expected it in their next ship-
ment, which was then nearly due, inferentially indicating,
at least, that it was not commonly understood that such
steel was difficult to procure, or that it was generally known
at that time among business men that it could not then
be procured. But, without further pursuing the evidence,
we think it would, on the showing made, be going too far

to hold that there was a breach of the condition of the contract relating to the time the boiler was to be completed. This part of the contract is, as we say, not very definite. While it is doubtless true that the respondents were bound to use reasonable diligence in procuring the materials necessary to make a complete marine boiler, yet the phrase itself is so far incapable of exact definition that it has only a relative signification, and before a person should be held in damages for an alleged failure to exercise reasonable diligence, it should be so far clear from the evidence that there had been such want of diligence that reasonable minds will not reasonably differ as to the fact. Here, in our opinion, there is not such a degree of proof, and we think the trial court did not err in so holding.

This conclusion renders it unnecessary to discuss other questions suggested in the briefs. The judgment is affirmed.

HADLEY, ANDERS, MOUNT and DUNBAR, JJ., concur.